# EXHIBIT A

# PART I

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

FRANCIS G. LECKER,
KENNETH MILLER, JR., Individually,
and on behalf of the Estate of
KENNETH MILLER, SR., deceased,
and the wrongful death beneficiaries of
KENNETH MILLER, SR., deceased,
JOHN M. MULLEN,
BARBARA REZENTES as Personal
Representative of the Estate of FRANK
CABRAL REZENTES, SR., deceased,
JULIA M. SHEPER,
LAWRENCE C. SCOTT,
ALLEN K. SHIROMA, as Personal
Representative of the Estate of
KATHLEEN JOANNE SHIROMA, deceased,
LEONA B. SINEGAR, DOROTHY SNEED,
MARY GLEN SPENCER,
WILLIAM E. STIDHAM, JANICE STURGIS,
MICHAEL SUMMERFIELD,
LAWRENCE TAYLOR as Personal
Representative of the Estate of
CAROL JACQUELINE TAYLOR, deceased
MELVIN G. TINKEL,
LAWRENCE TOKOSCH,
ROOSEVELT WALKER, JR., and
VERDA LYNN WOODRELL,

        Plaintiffs,

    v.

BAYER CORPORATION,
BAYER HEALTHCARE LLC, and
BAYER HEALTHCARE
PHARMACEUTICALS INC.,

        Defendants.



FILED
ST. CLAIR COUNTY
SEP 2 2 2009

Case No. : 09-L- 498

1

## COMPLAINT

**COME NOW** the Plaintiffs and Plaintiffs' Decedents, by and through their attorneys, John J. Driscoll, Christopher F. Cueto, and Robert L. Salim, and for their Complaint against BAYER CORPORATION, BAYER HEALTHCARE LLC, and BAYER HEALTHCARE PHARMACEUTICALS INC., ("Defendants") allege as follows:

1.     This action is brought by Plaintiffs and Plaintiffs' Decedents seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Trasylol, which was manufactured, marketed, distributed and/or sold by Defendants.

### PARTIES

**A.     PLAINTIFFS**

2.     Plaintiff Francis G. Lecker is a citizen and resident of the State of Pennsylvania, and was administered Trasylol in the State of Pennsylvania.  His use of Trasylol caused or significantly contributed to negative and detrimental effects to his health gradually over time and duration.  As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

3.     Plaintiff Kenneth Miller, Jr. is acting individually and on behalf of the Estate of Kenneth Miller, Sr., deceased, and on behalf of all wrongful death beneficiaries of Kenneth Miller, Sr., deceased.  Kenneth Miller, Sr. was a citizen and resident of the State of Iowa. Kenneth Miller, Sr. was a resident of the State of Iowa at the time he purchased, ingested, and died as a proximate cause of his Trasylol use. Accordingly, Kenneth Miller, Jr., Individually, and

2

on behalf of the Estate of Kenneth Miller, Sr. deceased, and the wrongful death beneficiaries of Kenneth Miller, Sr., deceased, maintains that Kenneth Miller, Sr. suffered injury and death that was caused or significantly contributed to be caused by his usage of Trasylol.  As plead with more particularity below, Plaintiffs allege that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the true dangers associated with its use.

4.    Plaintiff John M. Mullen is a citizen and resident of St. Clair County, Illinois, and was administered Trasylol in St. Clair County, Illinois.  His use of Trasylol caused or significantly contributed to negative and detrimental effects to his health gradually over time and duration.  As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

5.    Plaintiff Barbara Rezentes, is acting as Personal Representative of the Estate of Frank Cabral Rezentes, Sr., deceased.  Frank Cabral Rezentes, Sr. was a citizen and resident of the State of Hawaii.  Frank Cabral Rezentes, Sr. was a resident of the State of Hawaii at the time he purchased, ingested, and died as a proximate cause of his Trasylol use. Accordingly, Barbara Rezentes, as Personal Representative of the Estate of Frank Cabral Rezentes, Sr., deceased, maintains that Frank Cabral Rezentes, Sr. suffered injury and death that was caused or significantly contributed to be caused by his usage of Trasylol.  As plead with more particularity below, Plaintiffs allege that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the true dangers associated with its use.

3

6.    Plaintiff Julia M. Sheper is a citizen and resident of the State of South Carolina, and was administered Trasylol in the State of South Carolina. Her use of Trasylol caused or significantly contributed to negative and detrimental effects to her health gradually over time and duration. As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

7.    Plaintiff Lawrence C. Scott is a citizen and resident of the State of Texas, and was administered Trasylol in the State of Texas. His use of Trasylol caused or significantly contributed to negative and detrimental effects to his health gradually over time and duration. As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

8.    Plaintiff Allen K. Shiroma, is acting as Personal Representative of the Estate of Kathleen Joanne Shiroma, deceased. Kathleen Joanne Shiroma was a citizen and resident of the State of Hawaii. Kathleen Joanne Shiroma was a resident of the State of Hawaii at the time she purchased, ingested, and died as a proximate cause of her Trasylol use. Accordingly, Allen K. Siroma, as Personal Representative of the Estate of Kathleen Joanne Shiroma, deceased, maintains that Kathleen Joanne Shiroma suffered injury and death that was caused or significantly contributed to be caused by her usage of Trasylol. As plead with more particularity below, Plaintiffs allege that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the true dangers associated with its use.

4

9.     Plaintiff Leona B. Sinegar is a citizen and resident of the State of Texas, and was administered Trasylol in the State of Texas.   Her use of Trasylol caused or significantly contributed to negative and detrimental effects to her health gradually over time and duration. As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

10.     Plaintiff Dorothy Sneed is a citizen and resident of the State of Tennessee, and was administered Trasylol in the State of Tennessee.   Her use of Trasylol caused or significantly contributed to negative and detrimental effects to her health gradually over time and duration. As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

11.     Plaintiff Mary Glen Spencer is a citizen and resident of the State of Mississippi, and was administered Trasylol in the State of Mississippi.   Her use of Trasylol caused or significantly contributed to negative and detrimental effects to her health gradually over time and duration.   As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

12.     Plaintiff William E. Stidham is a citizen and resident of the State of Alabama, and was administered Trasylol in the State of Alabama.   His use of Trasylol caused or significantly contributed to negative and detrimental effects to his health gradually over time and duration. As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed,

5

inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

13.     Plaintiff Janice Sturgis is a citizen and resident of the State of New Jersey, and was administered Trasylol in the State of New Jersey.  Her use of Trasylol caused or significantly contributed to negative and detrimental effects to her health gradually over time and duration.  As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

14.     Plaintiff Michael Summerfield is a citizen and resident of the State of Michigan, and was administered Trasylol in the State of Michigan.  His use of Trasylol caused or significantly contributed to negative and detrimental effects to his health gradually over time and duration.  As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

15.     Plaintiff Lawrence Taylor is acting as Personal Representative of the Estate of Carol Jacqueline Taylor, deceased.  Carol Jacqueline Taylor was a citizen and resident of the State of Florida.  Carol Jacqueline Taylor was a resident of the State of Florida at the time she purchased, ingested, and died as a proximate cause of her Trasylol use. Accordingly, Lawrence Taylor, as Personal Representative of the Estate of Carol Jacqueline Taylor, deceased, maintains that Carol Jacqueline Taylor suffered injury and death that was caused or significantly contributed to be caused by her usage of Trasylol.  As plead with more particularity below, Plaintiffs allege that Trasylol is defectively designed, inadequately tested, dangerous to human

6

health, and lacked proper warnings as to the true dangers associated with its use.

16.    Plaintiff Melvin G. Tinkel is a citizen and resident of the State of Alabama, and was administered Trasylol in the State of Alabama. His use of Trasylol caused or significantly contributed to negative and detrimental effects to his health gradually over time and duration. As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

17.    Plaintiff Lawrence Tokosch is a citizen and resident of the State of Maryland, and was administered Trasylol in the State of Maryland. His use of Trasylol caused or significantly contributed to negative and detrimental effects to his health gradually over time and duration. As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

18.    Plaintiff Roosevelt Walker, Jr. is a citizen and resident of the State of Mississippi, and was administered Trasylol in the State of Mississippi. His use of Trasylol caused or significantly contributed to negative and detrimental effects to his health gradually over time and duration. As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

19.    Plaintiff Verda Lynn Woodrell is a citizen and resident of the State of Oklahoma, and was administered Trasylol in the State of Oklahoma. Her use of Trasylol caused or significantly contributed to negative and detrimental effects to her health gradually over time and

7

duration.  As more particularly pleaded below, the Plaintiff maintains that Trasylol is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

**B.   DEFENDANTS**

20.   Defendant Bayer Corporation, (hereinafter "Bayer"), maintains its principal place of business in Crafton, Pennsylvania.  Bayer is a corporation formed in the State of Indiana with its principal place of business located at 100 Bayer Road, Crafton, Pennsylvania 15205.  Bayer does business in and has substantial contacts with the State of Illinois.  At all times material to this lawsuit, Bayer was engaged in the business of developing, manufacturing, licensing, promoting, marketing, distributing, and/or selling in interstate commerce and the State of Illinois, either directly or indirectly, the pharmaceutical Trasylol, also known as Aprotinin.

21.   Defendant Bayer Healthcare LLC, is a division of Bayer Pharmaceutical Corporation, a wholly owned subsidiary of Defendant Bayer Corporation with its principal place of business located at 400 Morgan Lane, West Haven, Connecticut, 06516.  At all times material to this lawsuit, Bayer Healthcare was engaged in the business of developing, manufacturing, licensing, promoting, marketing, distributing, and/or selling in interstate commerce and the State of Illinois, either directly or indirectly, the pharmaceutical Trasylol, also know as Aprotinin.

22.   Defendant Bayer Healthcare Pharmaceuticals Inc., a successor in interest of Bayer Pharmaceuticals Corporation, (Bayer Pharmaceuticals Corporation has merged into Bayer Healthcare Pharmaceuticals, Inc.), is a wholly owned subsidiary of Defendant Bayer Corporation incorporated in the state of Delaware with its' principal place of business in Wayne, New Jersey. Prior to January 1, 2008, Bayer Pharmaceuticals Corporation was a fully owned subsidiary of

8

Defendant Bayer Corporation. Bayer Pharmaceuticals Corporation's principal place of business was located in West Haven, Connecticut. The development of Trasylol for sale in the United States, the conduct of clinical studies, the preparation of regulatory applications, the maintenance of regulatory records, the labeling and promotional activities regarding Trasylol, the decision to suspend marketing of Trasylol, and other actions central to the allegations of this lawsuit, were undertaken by Defendant Bayer Pharmaceuticals Corporation in the State of Connecticut and elsewhere.

23.     Hereinafter Bayer Corporation, Bayer Healthcare LLC, and Bayer Healthcare Pharmaceuticals, Inc., may be collectively referred to as the "Defendants."

## JURISDICTION AND VENUE

24.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendants, because Defendants are present in the State of Illinois such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

25.     This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Illinois' long-arm statute (735 ILCS 5/2-209) and the Constitutional requirements of Due Process in that the Defendants acting through their agents or apparent agents, committed one or more of the following:

  a.   Defendants transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1);

  b.   Defendants owned, used or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3);

  c.   Defendants made or performed a contract or promise substantially connected within this state, 735 ILCS 5/2-209(a)(7);

9

    d.   Defendants do business in and within Illinois, 735 ILCS 5/2-209(b)(4); and

    e.   Requiring Defendants to litigate this claim in Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

26.    Defendants marketed, promoted, and sold the product concerned in this litigation throughout the United States, including St. Clair County, Illinois.  Additionally, one or more of the Plaintiffs herein suffered injury from Defendants' drug, Trasylol, in St. Clair County, Illinois. Accordingly venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure.

## FACTS

27.    Trasylol (also known as Aprotinin injection) is a naturally occurring proteolytic enzyme inhibitor obtained from bovine lung. Aprotinin consists of 58 amino acid residues. It is a single-chain polypeptide, consisting of 6512 daltons and is cross-linked by three disulfide bridges.

28.    The reactive bond site for Aprotinin is lysine – 15 – alanine – 16, and it forms reversible stoichiometric complexes.

29.    Aprotinin reacts with the serine site of the enzyme.

30.    Aprotinin was discovered in the 1930s when Kraut et al isolated a kallikrein inhibitor from bovine lung.

31.    Aprotinin was launched as Trasylol in Germany in 1959.

32.    Trasylol was approved by the FDA in 1993 and is used to control bleeding in Coronary Artery Bypass Grafting (hereinafter referred to as "CABG") surgeries.  It is supplied as a clear, colorless, sterile isotonic solution for intravenous administration.

33.     Trasylol is indicated for prophylactic use to reduce perioperative blood loss and the need for blood transfusion in patients undergoing cardiopulmonary bypass in the course of CABG procedures.

34.     Trasylol is a broad spectrum protease inhibitor, which modulates the systemic inflammatory response associated with cardiopulmonary bypass surgery. The effects of Trasylol use in cardiopulmonary bypass surgery involve a reduction in inflammatory response, which translates into a decreased need for allogenic blood transfusions and reduced bleeding.

35.     The following is the warning carried by Trasylol prior to the FDA Advisory Board Committee Meeting: "Anaphylactic or anaphylactoid reactions are possible when Trasylol is administered. Hypersensitivity reactions are rare in patients with no prior exposure to aprotinin. The risk of anaphylaxis is increased in patients who are re-exposed to aprotinin-containing products. The benefit of Trasylol to patients undergoing primary CABG surgery should be weighed against the risk of anaphylaxis should a second exposure be required."

36.     All patients should first receive a test dose of Trasylol. This should be administered intravenously at least 10 minutes before the loading dose.

37.     After induction of anesthesia but prior to sternotomy, the loading dose of Trasylol is given to patients intravenously in the supine position, and is administered slowly over 20-30 minutes.

38.     Patients are also given a "pump-prime" dose, which is added to the priming fluid of the cardiopulmonary bypass circuit, by replacement of an aliquot of priming fluid, prior to institution of the cardiopulmonary bypass.

39.     Patients are also given a constant infusion dose, which is administered when the

11

loading dose is complete. This dose continues until surgery is complete and the patient leaves the operating room.

40.   Trasylol inhibits pro-inflammatory cytokine release and maintains glycoprotein homeostasis.

41.   According to Defendants, since its approval, an estimated 4.3 million patients have been given Trasylol.

42.   Defendants estimated that Trasylol generated about $293 million in sales in 2005 alone, making it the company's 11th largest-selling drug.

43.   In late 2005, Defendants forecast that Trasylol would someday generate upwards of $600 million annually.

### Trasylol's Association With the Increased Risk of Renal Failure, Heart Attack and Stroke

44.   On January 20, 2006, *Transfusion*, on-line edition, published an article suggesting an association between Trasylol administration and renal toxicity among patients undergoing cardiac surgery with cardiopulmonary bypass. This study was an observational study that used statistical methodology to compare outcomes from patients undergoing CABG.

45.   On January 26, 2006, *The New England Journal of Medicine* (NEJM) published an article by Mangano et. al. reporting an association of Trasylol with serious renal toxicity and ischemic events, including heart attack and stroke in patients undergoing coronary artery bypass grafting surgery. This study was an observational study of patients undergoing CABG who received either Trasylol, one of two alternative drugs intended to decrease peripoerative bleeding (aminocaproic acid or tranexamic acid), or no specific drug treatment.

12

46.     The FDA evaluated these studies, along with other studies in the literature and reports submitted to the FDA through the MedWatch program, to determine if labeling changes or other actions were warranted.

47.     While the FDA was continuing its evaluation it provided the following recommendations to healthcare providers and patients:

> Physicians who use Trasylol should carefully monitor patients for the occurrence of toxicity, particularly to the kidneys, heart, or central nervous system and promptly report adverse event information to Bayer, the drug manufacturer, or to the FDA MedWatch program, as described at the end of this advisory.

> Physicians should consider limiting Trasylol use to those situations where the clinical benefit of reduced blood loss is essential to medical management of the patient and outweighs the potential risks.

**FDA September 29, 2006 Advisory Board Committee Meeting and the Walker Study**

48.     The FDA Advisory Board Committee convened on September 21, 2006 to discuss its findings regarding the safety of Trasylol and determine whether the warning on Trasylol needed to be changed.

49.     After reviewing what it considered to be all of the available data on the safety of Trasylol, the 19-member advisory panel recommended to the FDA that Defendant Bayer didn't need to strengthen a warning to doctors about the drug.

50.     Just days later, the FDA was contacted by Alexander Walker, a professor at Harvard's School of Public Health, about a 67,000 patient-study he helped conduct at Bayer's request.

13

51.     Bayer knew of this data and failed to disclose this data, from its own research, to the FDA at the September 21 Advisory Board Committee meeting. This data confirmed that Trasylol increased the risk of renal failure, heart attack, and stroke.

52.     This study, conducted at the request of Bayer, examined 67,000 hospital records of patients undergoing CABG surgery. The study suggests that the patients who received Trasylol were at an increased risk for death, kidney failure, congestive heart failure, and stroke.

53.     Since this nondisclosure was unearthed, Bayer has suspended two of its employees.

## FDA Revises Labeling for Trasylol on December 15, 2006

54.     Following the FDA-conducted review of safety information that began in January 2006, the FDA approved a revision in the Trasylol label.

55.     On December 15, 2006 the U.S. Food and Drug Administration approved revised labeling for Trasylol.

56.     The revised label strengthened Trasylol's safety warnings and limited Trasylol's approved usage to very specific situations.

57.     The new labeling specifies that Trasylol should only be given to patients who are at an increased risk for blood loss and blood transfusion in the setting of coronary bypass graft surgery when patients undergo cardiopulmonary bypass.

58.     The changes also include a warning that Trasylol increases the possible risk for kidney damage, and suggest ways to manage and reduce the patient's risk for hypersensitivity reactions.

14

**Bayer Discontinues Trasylol Clinical Trials**

59.    On January 25, 2007, Bayer announced it was discontinuing three clinical studies for Trasylol.

60.    The studies were to investigate the safety and efficacy of Trasylol on transfusion requirements and blood loss in adults undergoing spinal fusion surgery, pneumonectomy or esophagectomy for cancer, and

61.    As a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of the Defendant, as described herein, Plaintiffs have sustained permanent and devastating injuries, including but not limited to, permanent renal damage, renal insufficiency and/or multi-system organ failure.  All injuries have caused and will continue in the future to cause Plaintiffs extensive anxiety, distress, fear, pain, suffering, and depression, while they have substantially reduced the Plaintiffs' ability to enjoy life.

62.    As a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of the Defendant, as described herein, Plaintiffs has sustained and will sustain a loss of earnings and diminution of earning capacity in the future.

63.    As a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of the Defendant, as described herein, Plaintiffs have required reasonable and necessary health care, attention and services, and have incurred medical, incidental, and service expenses thereupon.  Plaintiffs allege, on information and belief, that they will in the future be required to obtain medical and/or hospital care, attention, and services, as a direct, proximate and legal result of the negligence, carelessness, and other wrongdoing of the Defendants, as described herein.

## COUNT I – BAYER CORPORATION

## STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN
### (Failure to Warn)

64.    Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

65.    The Trasylol manufactured and/or supplied by Defendant was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects;  the warnings given did not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Defendant failed to perform adequate testing in that adequate testing would have shown that Trasylol possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Trasylol.  Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

66.    The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because Defendant failed to provide adequate warnings to users or consumers of Trasylol and continued to aggressively promote Trasylol.

67.    As the proximate cause and legal result of the defective condition of Trasylol as manufactured and/or supplied and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendant described herein, Plaintiffs have been damaged.

16

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT II – BAYER HEALTHCARE LLC

### STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN
**(Failure to Warn)**

68.     Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

69.     The Trasylol manufactured and/or supplied by Defendant was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects;  the warnings given did not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Defendant failed to perform adequate testing in that adequate testing would have shown that Trasylol possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Trasylol.  Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

70.     The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because Defendant failed to

17

provide adequate warnings to users or consumers of Trasylol and continued to aggressively promote Trasylol.

71.     As the proximate cause and legal result of the defective condition of Trasylol as manufactured and/or supplied and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendant described herein, Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT III – BAYER HEALTHCARE PHARMACEUTICALS INC.

## STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN
### (Failure to Warn)

72.     Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

73.     The Trasylol manufactured and/or supplied by Defendant was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects;  the warnings given did not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Defendant failed to perform adequate testing in that adequate testing would have shown that Trasylol possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Trasylol.  Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

18

74.     The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because Defendant failed to provide adequate warnings to users or consumers of Trasylol and continued to aggressively promote Trasylol.

75.     As the proximate cause and legal result of the defective condition of Trasylol as manufactured and/or supplied and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendant described herein, Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT IV – BAYER CORPORATION

### STRICT PRODUCT LIABILITY
**(Pursuant to Restatement Second of Torts 402a (1965))**

76.     Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

77.     The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.

78.  ·  Alternatively, the Trasylol manufactured and/or distributed and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more

19

dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available to control bleeding during bypass procedures.

79.     There existed, at all times material hereto, safer alternative medications.

80.     Defendant did not perform adequate testing upon Trasylol.  Adequate testing would have revealed that Trasylol causes serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

81.     The Trasylol manufactured, designed, marketed, distributed and/or sold by Defendant was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Trasylol, and the severity and duration of such adverse effects;  the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

82.     Defendant did not warn the FDA of material facts regarding the safety and efficacy of Trasylol, which facts Defendant knew or should have known.

83.     The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after the Defendant knew or should have known of the risk of injury from Trasylol, they failed to provide adequate warnings to users or consumers of Trasylol and continued to promote Trasylol.

84.     As a result of the defective condition of Trasylol, Plaintiffs have suffered damage and injury.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT V – BAYER HEALTHCARE LLC

### STRICT PRODUCT LIABILITY
**(Pursuant to Restatement Second of Torts 402a (1965))**

85.   Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

86.   The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.

87.   Alternatively, the Trasylol manufactured and/or distributed and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available to control bleeding during bypass procedures.

88.   There existed, at all times material hereto, safer alternative medications.

89.   Defendant did not perform adequate testing upon Trasylol. Adequate testing would have revealed that Trasylol causes serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

90.    The Trasylol manufactured, designed, marketed, distributed and/or sold by Defendant was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Trasylol, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

91.    Defendant did not warn the FDA of material facts regarding the safety and efficacy of Trasylol, which facts Defendant knew or should have known.

92.    The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after the Defendant knew or should have known of the risk of injury from Trasylol, they failed to provide adequate warnings to users or consumers of Trasylol and continued to promote Trasylol.

93.    As a result of the defective condition of Trasylol, Plaintiffs have suffered damage and injury.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT VI – BAYER HEALTHCARE PHARMACEUTICALS INC.

### STRICT PRODUCT LIABILITY
**(Pursuant to Restatement Second of Torts 402a (1965))**

94.    Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

95.    The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or

22

suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.

96.    Alternatively, the Trasylol manufactured and/or distributed and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available to control bleeding during bypass procedures.

97.    There existed, at all times material hereto, safer alternative medications.

98.    Defendant did not perform adequate testing upon Trasylol. Adequate testing would have revealed that Trasylol causes serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

99.    The Trasylol manufactured, designed, marketed, distributed and/or sold by Defendant was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Trasylol, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

100.    Defendant did not warn the FDA of material facts regarding the safety and efficacy of Trasylol, which facts Defendant knew or should have known.

101.    The Trasylol manufactured and/or distributed and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after the Defendant

23

knew or should have known of the risk of injury from Trasylol, they failed to provide adequate warnings to users or consumers of Trasylol and continued to promote Trasylol.

102.   As a result of the defective condition of Trasylol, Plaintiffs have suffered damage and injury.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT VII – BAYER CORPORATION
## INTENTIONAL INFLICTION OF EMOTIONAL DITRESS

103.   Plaintiffs incorporates herein by reference the paragraphs of this Complaint and further state that:

104.   Defendant is liable to Plaintiffs in that it intentionally and recklessly inflicted on them emotional distress by preventing public awareness of the risks associated with the use and administration of Trasylol.

105.   Defendant knew or should have known that its failure to fully and truthfully inform the public would cause severe and grave emotional distress in those patients who were administered these drugs and subsequently had a renal failure requiring dialysis that caused them permanent and debilitating injuries.

106.   Defendant's intentional decision to withhold and mis-report information concerning the high risk of suffering renal failure from use of Trasylol was motivated by its desire to preserve sales of this drug.

24

107. Defendant's knowing, intentional and conscious decision to withhold this information from the public and Plaintiffs was outrageous and intolerable and offends the moral standards of this community.

108. As a direct and proximate result of Defendant's acts and/or omissions, Plaintiffs suffered severe emotional distress, including but not limited to, depression, fear of death, and nervousness.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT VIII – BAYER HEALTHCARE LLC

## INTENTIONAL INFLICTION OF EMOTIONAL DITRESS

109. Plaintiffs incorporates herein by reference the paragraphs of this Complaint and further state that:

110. Defendant is liable to Plaintiffs in that it intentionally and recklessly inflicted on them emotional distress by preventing public awareness of the risks associated with the use and administration of Trasylol.

111. Defendant knew or should have known that its failure to fully and truthfully inform the public would cause severe and grave emotional distress in those patients who were administered these drugs and subsequently had a renal failure requiring dialysis that caused them permanent and debilitating injuries.

112. Defendant's intentional decision to withhold and mis-report information concerning the high risk of suffering renal failure from use of Trasylol was motivated by its

desire to preserve sales of this drug.

113.    Defendant's knowing, intentional and conscious decision to withhold this information from the public and Plaintiffs was outrageous and intolerable and offends the moral standards of this community.

114.    As a direct and proximate result of Defendant's acts and/or omissions, Plaintiffs suffered severe emotional distress, including but not limited to, depression, fear of death, and nervousness.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT IX– BAYER HEALTHCARE PHARMACEUTICALS INC.
## INTENTIONAL INFLICTION OF EMOTIONAL DITRESS

115.    Plaintiffs incorporates herein by reference the paragraphs of this Complaint and further state that:

116.    Defendant is liable to Plaintiffs in that it intentionally and recklessly inflicted on them emotional distress by preventing public awareness of the risks associated with the use and administration of Trasylol.

117.    Defendant knew or should have known that its failure to fully and truthfully inform the public would cause severe and grave emotional distress in those patients who were administered these drugs and subsequently had a renal failure requiring dialysis that caused them permanent and debilitating injuries.

118.    Defendant's intentional decision to withhold and mis-report information

26

concerning the high risk of suffering renal failure from use of Trasylol was motivated by its desire to preserve sales of this drug.

119.   Defendant's knowing, intentional and conscious decision to withhold this information from the public and Plaintiffs was outrageous and intolerable and offends the moral standards of this community.

120.   As a direct and proximate result of Defendant's acts and/or omissions, Plaintiffs suffered severe emotional distress, including but not limited to, depression, fear of death, and nervousness.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT X – BAYER CORPORATION

## COMMON LAW FRAUD

121.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

122.   Defendant made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth. Defendant had in its possession adverse drug event reports, drug studies, and other documentation about Trasylol and yet made the following misrepresentations:

   a. Misrepresentations regarding the frequency of Trasylol-related adverse event reports or occurrences in the Trasylol label, package insert or PDR label;

   b. Misrepresentations as to the existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Trasylol;

27

c. Misrepresentations as to the efficacy of Trasylol;

d. Misrepresentations as to the number of adverse events and deaths reported with the use of Trasylol;

e. Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of Trasylol.

123. Defendant intended that these misrepresentations be relied upon by physicians, including Plaintiffs' physicians, healthcare providers and consumers. Plaintiffs did rely upon the misrepresentations that caused Plaintiffs' injuries.

124. Defendant's misrepresentations were the proximate and/or producing cause of Plaintiffs' injuries.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XI -- BAYER HEALTHCARE LLC

## COMMON LAW FRAUD

125. Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

126. Defendant made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth. Defendant had in its possession adverse drug event reports, drug studies, and other documentation about Trasylol and yet made the following misrepresentations:

a. Misrepresentations regarding the frequency of Trasylol-related adverse event reports or occurrences in the Trasylol label, package insert or PDR label;

28

b. Misrepresentations as to the existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Trasylol;

c. Misrepresentations as to the efficacy of Trasylol;

d. Misrepresentations as to the number of adverse events and deaths reported with the use of Trasylol;

e. Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of Trasylol.

127.   Defendant intended that these misrepresentations be relied upon by physicians, including Plaintiffs' physicians, healthcare providers and consumers. Plaintiffs did rely upon the misrepresentations that caused Plaintiffs' injuries.

128.   Defendant's misrepresentations were the proximate and/or producing cause of Plaintiffs' injuries.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XII – BAYER HEALTHCARE PHARMACEUTICALS INC.

## COMMON LAW FRAUD

129.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

130.   Defendant made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth. Defendant had in its possession adverse drug event reports, drug studies, and other documentation about Trasylol and yet made the following misrepresentations:

29

a.  Misrepresentations regarding the frequency of Trasylol-related adverse event reports or occurrences in the Trasylol label, package insert or PDR label;

b.  Misrepresentations as to the existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Trasylol;

c.  Misrepresentations as to the efficacy of Trasylol;

d.  Misrepresentations as to the number of adverse events and deaths reported with the use of Trasylol;

e.  Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of Trasylol.

131.  Defendant intended that these misrepresentations be relied upon by physicians, including Plaintiffs' physicians, healthcare providers and consumers. Plaintiffs did rely upon the misrepresentations that caused Plaintiffs' injuries.

132.  Defendant's misrepresentations were the proximate and/or producing cause of Plaintiffs' injuries.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XIII – BAYER CORPORATION

### NEGLIGENCE

133.  Plaintiffs incorporate herein by reference the paragraphs of this Complaint and further state that:

134.  At all times material to this lawsuit, Defendant owed Plaintiffs a duty of reasonable care and safety.

135.  Defendant's duties included, but were not limited to, carefully and properly

30

designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing Trasylol into the stream of commerce, and providing warnings with regard to this drug.

136.    Defendant negligently and carelessly breached the above-described duties to Plaintiffs by committing negligent acts and/or omissions including but not limited to:

a.  Defendant failed to use ordinary care in designing, testing, and manufacturing Trasylol so as to avoid the high risk to users of unreasonable, dangerous side-effects, some of which are fatal, such renal failure;

b.  Defendant failed to accompany Trasylol with adequate warnings that would alert doctors, consumers, and other users to the potential adverse side effects associated with the use of these drugs and the nature, severity and duration of such adverse effects;

c.  Defendant failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Trasylol;

d.  Defendant failed to warn Plaintiffs prior to actively encouraging the sale of Trasylol, either directly or indirectly, orally or in writing, about the possibility of becoming disabled as a result of the use of these drugs;

e.  Defendant continued to promote the safety of Trasylol, while downplaying any risks, even after Defendants knew of the risk of renal failure; and

f.  Defendants were otherwise careless or negligent.

137.    Although Defendant knew or should have known that Trasylol caused unreasonably dangerous side effects which many users would be unable to remedy by any

means, Defendant continued to market this drug to doctors for use in cardiac surgeries, when there were safer and less expensive alternatives available.

138.   Defendant knew or should have known that consumers, like Plaintiffs, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

139.   As a direct and proximate cause of Defendant's negligent acts and/oromissions, Plaintiffs suffered, and continue to suffer from, each of the injuries and damages set forth in this Complaint.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XIV – BAYER HEALTHCARE LLC

## NEGLIGENCE

140.   Plaintiffs incorporate herein by reference the paragraphs of this Complaint and further state that:

141.   At all times material to this lawsuit, Defendant owed Plaintiffs a duty of reasonable care and safety.

142.   Defendant's duties included, but were not limited to, carefully and properly designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing Trasylol into the stream of commerce, and providing warnings with regard to this drug.

143.   Defendant negligently and carelessly breached the above-described duties to Plaintiffs by committing negligent acts and/or omissions including but not limited to:

32

a. Defendant failed to use ordinary care in designing, testing, and manufacturing Trasylol so as to avoid the high risk to users of unreasonable, dangerous side-effects, some of which are fatal, such renal failure;

b. Defendant failed to accompany Trasylol with adequate warnings that would alert doctors, consumers, and other users to the potential adverse side effects associated with the use of these drugs and the nature, severity and duration of such adverse effects;

c. Defendant failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Trasylol;

d. Defendant failed to warn Plaintiffs prior to actively encouraging the sale of Trasylol, either directly or indirectly, orally or in writing, about the possibility of becoming disabled as a result of the use of these drugs;

e. Defendant continued to promote the safety of Trasylol, while downplaying any risks, even after Defendants knew of the risk of renal failure; and

f. Defendants were otherwise careless or negligent.

144.    Although Defendant knew or should have known that Trasylol caused unreasonably dangerous side effects which many users would be unable to remedy by any means, Defendant continued to market this drug to doctors for use in cardiac surgeries, when there were safer and less expensive alternatives available.

145.    Defendant knew or should have known that consumers, like Plaintiffs, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

146.    As a direct and proximate cause of Defendant's negligent acts and/oromissions,

33

Plaintiffs suffered, and continue to suffer from, each of the injuries and damages set forth in this Complaint.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XV– BAYER HEALTHCARE PHARMACEUTICALS INC.

### NEGLIGENCE

147.    Plaintiffs incorporate herein by reference the paragraphs of this Complaint and further state that:

148.    At all times material to this lawsuit, Defendant owed Plaintiffs a duty of reasonable care and safety.

149.    Defendant's duties included, but were not limited to, carefully and properly designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing Trasylol into the stream of commerce, and providing warnings with regard to this drug.

150.    Defendant negligently and carelessly breached the above-described duties to Plaintiffs by committing negligent acts and/or omissions including but not limited to:

a.    Defendant failed to use ordinary care in designing, testing, and manufacturing Trasylol so as to avoid the high risk to users of unreasonable, dangerous side-effects, some of which are fatal, such renal failure;

b.    Defendant failed to accompany Trasylol with adequate warnings that would alert doctors, consumers, and other users to the potential adverse side effects associated

34

with the use of these drugs and the nature, severity and duration of such adverse effects;

c. Defendant failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Trasylol;

d. Defendant failed to warn Plaintiffs prior to actively encouraging the sale of Trasylol, either directly or indirectly, orally or in writing, about the possibility of becoming disabled as a result of the use of these drugs;

e. Defendant continued to promote the safety of Trasylol, while downplaying any risks, even after Defendants knew of the risk of renal failure; and

f. Defendants were otherwise careless or negligent.

151. Although Defendant knew or should have known that Trasylol caused unreasonably dangerous side effects which many users would be unable to remedy by any means, Defendant continued to market this drug to doctors for use in cardiac surgeries, when there were safer and less expensive alternatives available.

152. Defendant knew or should have known that consumers, like Plaintiffs, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

153. As a direct and proximate cause of Defendant's negligent acts and/oromissions, Plaintiffs suffered, and continue to suffer from, each of the injuries and damages set forth in this Complaint.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

35

## COUNT XVI – BAYER CORPORATION

## NEGLIGENT MISREPRESENTATION

154. Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

155. Defendant failed to communicate to Plaintiffs and/or the general public that the administration of Trasylol could cause serious injuries after it became aware of such risks. Instead, Defendant represented in its marketing that Trasylol was safe and effective.

156. Plaintiffs bring this cause of action against Defendant under the theory of negligent misrepresentation for the following reasons:

    a. Defendant, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Trasylol in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendant made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

    b. The above misrepresentations were made to Plaintiffs, as well as the general public;

    c. Plaintiffs and their healthcare providers justifiably relied on Defendant's misrepresentations; and

    d. Consequently, Plaintiffs were injected with Trasylol to Plaintiffs' detriment. Defendant's negligent misrepresentations proximately caused Plaintiffs' injuries and monetary losses.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XVII – BAYER HEALTHCARE LLC

### NEGLIGENT MISREPRESENTATION

157.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

158.   Defendant failed to communicate to Plaintiffs and/or the general public that the administration of Trasylol could cause serious injuries after it became aware of such risks. Instead, Defendant represented in its marketing that Trasylol was safe and effective.

159.   Plaintiffs bring this cause of action against Defendant under the theory of negligent misrepresentation for the following reasons:

a. Defendant, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Trasylol in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendant made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

b. The above misrepresentations were made to Plaintiffs, as well as the general public;

c. Plaintiffs and their healthcare providers justifiably relied on Defendant's misrepresentations; and

d. Consequently, Plaintiffs were injected with Trasylol to Plaintiffs' detriment. Defendant's negligent misrepresentations proximately caused Plaintiffs' injuries and monetary losses.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XVIII– BAYER HEALTHCARE PHARMACEUTICALS INC.

### NEGLIGENT MISREPRESENTATION

160.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

161.    Defendant failed to communicate to Plaintiffs and/or the general public that the administration of Trasylol could cause serious injuries after it became aware of such risks. Instead, Defendant represented in its marketing that Trasylol was safe and effective.

162.    Plaintiffs bring this cause of action against Defendant under the theory of negligent misrepresentation for the following reasons:

   a.  Defendant, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Trasylol in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendant made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

   b.  The above misrepresentations were made to Plaintiffs, as well as the general public;

   c.  Plaintiffs and their healthcare providers justifiably relied on Defendant's misrepresentations; and

   d.  Consequently, Plaintiffs were injected with Trasylol to Plaintiffs' detriment. Defendant's negligent misrepresentations proximately caused Plaintiffs' injuries and monetary losses.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XIX – BAYER CORPORATION

### EXPRESS WARRANTY

163.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

164.   Defendant is a merchant .and/or seller of Trasylol.  Defendant sold Trasylol to consumers, including Plaintiffs, for the ordinary purpose for which such drugs are used by consumers.  Defendant made representations to Plaintiffs about the quality or characteristics of Trasylol by affirmation of fact, promise and/or description.  The representations by Defendant became part of the basis of the bargain between Defendant and Plaintiffs.  Trasylol did not comport with the representations made by Defendant in that it was not safe for the use for which it was marketed.  This breach of duty by Defendant was a proximate cause of the injuries and monetary loss suffered by Plaintiffs.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XX – BAYER HEALTHCARE LLC

### EXPRESS WARRANTY

165.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

166.   Defendant is a merchant and/or seller of Trasylol.  Defendant sold Trasylol to consumers, including Plaintiffs, for the ordinary purpose for which such drugs are used by consumers.  Defendant made representations to Plaintiffs about the quality or characteristics of Trasylol by affirmation of fact, promise and/or description.  The representations by Defendant became part of the basis of the bargain between Defendant and Plaintiffs.  Trasylol did not comport with the representations made by Defendant in that it was not safe for the use for which it was marketed.  This breach of duty by Defendant was a proximate cause of the injuries and monetary loss suffered by Plaintiffs.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXI – BAYER HEALTHCARE PHARMACEUTICALS INC.

## EXPRESS WARRANTY

167.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

168.   Defendant is a merchant and/or seller of Trasylol.  Defendant sold Trasylol to consumers, including Plaintiffs, for the ordinary purpose for which such drugs are used by consumers.  Defendant made representations to Plaintiffs about the quality or characteristics of Trasylol by affirmation of fact, promise and/or description.  The representations by Defendant became part of the basis of the bargain between Defendant and Plaintiffs.  Trasylol did not comport with the representations made by Defendant in that it was not safe for the use for which

it was marketed. This breach of duty by Defendant was a proximate cause of the injuries and monetary loss suffered by Plaintiffs.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXII – BAYER CORPORATION

## IMPLIED WARRANTY

169.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

## A.    WARRANTY OF MERCHANTABILITY

170.    Defendant is a merchant and/or seller of Trasylol. Plaintiffs purchased Trasylol from Defendant and were injected with Trasylol for the ordinary purpose for which it is used by consumers. At the time it was purchased by Plaintiffs, Trasylol was not fit for the ordinary purpose for which such drugs are used. Trasylol was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely. Defendant's breach of its implied warranty of merchantability caused Plaintiffs' injuries and monetary losses.

## B.    WARRANTY OF FITNESS

171.    Defendant sold Trasylol to Plaintiffs with the knowledge that Plaintiffs were purchasing Trasylol for a particular purpose. Further, Defendant knew, or should have known, that Plaintiffs were relying on Defendant's skill or judgment to select goods fit for Plaintiffs' purpose.

172. Defendant delivered goods that were unfit for Plaintiffs' particular purpose, and thus breached its implied warranty of fitness. Defendant's failure to select and sell a product which was reasonably safe for its intended use proximately caused Plaintiffs' injuries and monetary losses.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXIII – BAYER HEALTHCARE LLC

## IMPLIED WARRANTY

173. Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

### A.     WARRANTY OF MERCHANTABILITY

174. Defendant is a merchant and/or seller of Trasylol. Plaintiffs purchased Trasylol from Defendant and were injected with Trasylol for the ordinary purpose for which it is used by consumers. At the time it was purchased by Plaintiffs, Trasylol was not fit for the ordinary purpose for which such drugs are used. Trasylol was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely. Defendant's breach of its implied warranty of merchantability caused Plaintiffs' injuries and monetary losses.

### B.     WARRANTY OF FITNESS

175. Defendant sold Trasylol to Plaintiffs with the knowledge that Plaintiffs were purchasing Trasylol for a particular purpose. Further, Defendant knew, or should have known,

that Plaintiffs were relying on Defendant's skill or judgment to select goods fit for Plaintiffs' purpose.

176.   Defendant delivered goods that were unfit for Plaintiffs' particular purpose, and thus breached its implied warranty of fitness.  Defendant's failure to select and sell a product which was reasonably safe for its intended use proximately caused Plaintiffs' injuries and monetary losses.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXIV– BAYER HEALTHCARE PHARMACEUTICALS INC.

## IMPLIED WARRANTY

177.   Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

A.   WARRANTY OF MERCHANTABILITY

178.   Defendant is a merchant and/or seller of Trasylol.  Plaintiffs purchased Trasylol from Defendant and were injected with Trasylol for the ordinary purpose for which it is used by consumers.  At the time it was purchased by Plaintiffs, Trasylol was not fit for the ordinary purpose for which such drugs are used.  Trasylol was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely.  Defendant's breach of its implied warranty of merchantability caused Plaintiffs' injuries and monetary losses.

43

B.    **WARRANTY OF FITNESS**

179.    Defendant sold Trasylol to Plaintiffs with the knowledge that Plaintiffs were purchasing Trasylol for a particular purpose.  Further, Defendant knew, or should have known, that Plaintiffs were relying on Defendant's skill or judgment to select goods fit for Plaintiffs' purpose.

180.    Defendant delivered goods that were unfit for Plaintiffs' particular purpose, and thus breached its implied warranty of fitness.  Defendant's failure to select and sell a product which was reasonably safe for its intended use proximately caused Plaintiffs' injuries and monetary losses.

WHEREFORE, the Plaintiffs demand judgment in their favor and against Defendant in a sum in excess of $50,000; for costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

## COUNT XXV

## SURVIVAL AND FAMILY EXPESES ACT

181.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

182.    Defendants knew or should have known that it was foreseeable that users of their Trasylol, such as Plaintiffs' Decedents, would suffer injury or death as a result of Defendants' failure to exercise ordinary care as described in the foregoing.

183.    That, as a direct and proximate cause of one or more of the aforementioned negligent acts and/or omissions on behalf of Defendants, Plaintiffs' Decedents sustained injury, incurred medical expenses , suffered from disability, suffered a diminished ability to enjoy life,

44

and experienced pain and suffering until ultimate death.

184.   Had Plaintiffs' Decedents survived, they would have been able to bring this cause in their own names.

185.   At all times relevant herein, there was in force and effect a statute commonly known as the Survival Act (755 ILCS 5/27-6), and other similar operative state statutes and acts.

186.   At all times relevant herein, there was in force and effect a statute commonly known as the Family Expenses Act (750 ILCS 65/15), and other similar operative state statutes and acts.

WHEREFORE, Plaintiffs and Plaintiffs' Decedents, pray for judgment in their favor and against Defendants, in an amount in excess of $50,000, plus the cost of this suit, and for any other relief deemed proper.

## COUNT XXVI

## WRONGFUL DEATH

187.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

188.   That as a direct and proximate cause of the Defendants' wrongful acts and negligence, Plaintiffs' Decedents died and Plaintiffs were caused to incur funeral and burial expenses.

189.   Plaintiffs' Decedents left surviving family and heirs, each of whom has sustained a loss of companionship, society, and/or consortium as a result of the death of Plaintiffs' Decedents.

190.   At all relevant times, there was in force and effect a statute commonly known as

45

the Wrongful Death Act (740 ILCS 180/1 *et seq.*), and other similar operative state statutes and

acts.

WHEREFORE, Plaintiffs and Plaintiffs' Decedents, pray for judgment in their favor and

against Defendants, in an amount in excess of $50,000, plus the cost of this suit, and for any

other relief deemed proper.

Respectfully Submitted,

John J. Driscoll, 6276464
**Driscoll & Cueto, LLC**
211 N. Broadway, Ste. 2440
St. Louis, MO  63102
(314) 932-3232
(3140 932-3233 facsimile

Christopher Cueto
**Driscoll & Cueto, LLC**
7110 W. Main St.
Belleville, IL  62223
(618) 277-1554
(618) 277-0962 facsimile

Robert L. Salim
1901 Texas Street
Natchitoches, LA  71457
(318) 352-5999
(318) 352-5998 facsimile

*Attorneys for Plaintiffs*

46

CIRCUIT COURT FOR THE 20TH JUDICIAL CIRCUIT

State of Illinois ) S.S.
County of St. Clair )

Case Number  09-L- 498

Amount Claimed  In excess of $50,000.00

FRANCIS G. LECKER, et. al.

VS

BAYER CORPORATION, et. al.

Plaintiff(s)                                   Defendant(s)

Classification Prefix _____ Code_____   Nature of Action _____ Code_____

Pltf. Atty. John J. Driscoll _____ Code____
Address  211 N. Broadway, Ste. 2440 ____
City St. Louis, MO  63102  314-932-3232 Phone
Add. Pltf. Atty. _____ Code____

**TO THE SHERIFF: SERVE THIS DEFENDANT AT:**

NAME    Bayer Corporation
c/o Illinois Corporation Service Company
ADDRESS    801 Adlai Stevenson Drive

CITY & STATE  Springfield, MO IL 62703

**SUMMONS COPY**

x
To the above named defendant(s). . . . . . :
x

☐ **A.** You are hereby summoned and required to appear before this court at _____
(court location) _____ at _____ M. On _____ 20 ___
to answer the complaint in this case, a copy of which is hereto attached.  If you fail to do so, a judgment by
default may be taken against you for the relief asked in the complaint.

☐ **B.** You are hereby summoned and required to file an answer in this case or otherwise file your appear-
ance, in the office of the Clerk of this court, within 30 days after service of this summons, exclusive of the day
of service. If you fail to do so, judgment or decree by default may be taken against you for the relief prayed in
the complaint.

**TO THE OFFICER:**
This summons must be returned by the officer or other person to whom it was given for service, with
indorsement thereon of service and fees if any, immediately after service.  In the event that paragraph A of this
summons is applicable this summons may not be served less than three days before the day of appearance.  If
service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

SEP 22 2009

WITNESS, _____ 20 ____

BRENDAN F. KELLY
CIRCUIT CLERK

**SEAL**

Clerk of Court
BY DEPUTY: _____

DATE OF SERVICE: _____ 20 ___
(To be inserted by officer on copy left with defendant
or other person)

**NOTICE TO DEFENDANT IN SMALL CLAIMS UNDER $15,000- -SEE REVERSE SIDE**

CC-MR-1

**NOTICE TO DEFENDANTS (Pursuant to Supreme Court Rule)**

In a civil action for money (under $15,000) in which the summons requires your appearance on a specified day, you may enter your appearance as follows:

1. You may enter your appearance prior to the time specified in the summons by filing a written appearance, answer or motion in person or by attorney at the office of the Circuit Clerk, #10 Public Square, Belleville, Illinois.

2. You may enter your appearance at the time and place specified in the summons by making your presence known to the Judge when your case is called.

When you appear in Court, the Judge will require you to enter your appearance in writing, if you have not already done so. Your written appearance, answer, or motion shall state with particularity the address where service of notice or papers may be made upon you or an attorney representing you.

Your case will be heard on the date set forth in the summons unless otherwise ordered by the Court. Only the Court can make this exception. Do not call upon the Court Clerk or the Sheriff's office if you feel you will be unable to be present at the time and place specified. Continuances can be granted only on the day set forth in the summons, and then only for good cause shown. You, or someone representing you, MUST APPEAR IN PERSON at the specified time and place and make such a request.

If you owe and desire to pay the claim of the plaintiff before the return date on the summons, notify the plaintiff or his attorney of your desire to do so. Request that he appear at the time specified and ask for the dismissal of the suit against you. Do not make such a request of the Court Clerk or the Sheriff, as only the Judge can dismiss a case, and, then only with a proper court order which must be entered in open Court.

*John Pierce, Sr*
*9/22/09*

CIRCUIT COURT FOR THE 20TH JUDICIAL CIRCUIT

State of Illinois   )
                    ) S.S.
County of St. Clair )

Case Number _____ 09-L-___-4618

Amount Claimed   In excess of $50,000.00

FRANCIS G. LEEKER, et. al.

BAYER CORPORATION, et. al.

VS

Plaintiff(s)                              Defendant(s)

Classification Prefix _____ Code _____   Nature of Action _____ Code _____

TO THE SHERIFF: SERVE THIS DEFENDANT AT:

Pltf. Atty. John J. Driscoll ____ Code _____
Address 211 N. Broadway, Ste. 2440
City St. Louis, MO 63102 Phone 932-3232
Add. Pltf. Atty. _____ Code _____

NAME  Bayer Healthcare LLC
c/o Illinois Corporation
      Service Company
ADDRESS  801 Adlai Stevenson Drive

        x               SUMMONS COPY
To the above named defendant(s). . . . . . :
        x

CITY & STATE  Springfield, IL  62703

[ ] A. You are hereby summoned and required to appear before this court at _____
(court location) _____ at _____ M. On _____ 20 ___
to answer the complaint in this case, a copy of which is hereto attached.   If you fail to do so, a judgment by
default may be taken against you for the relief asked in the complaint.

[ ] B. You are hereby summoned and required to file an answer in this case or otherwise file your appear-
ance, in the office of the Clerk of this court, within 30 days after service of this summons, exclusive of the day
of service.  If you fail to do so, judgment or decree by default may be taken against you for the relief prayed in
the complaint.

TO THE OFFICER:
   This summons must be returned by the officer or other person to whom it was given for service, with
indorsement thereon of service and fees if any, immediately after service.  In the event that paragraph A of this
summons is applicable this summons may not be served less than three days before the day of appearance.  If
service cannot be made, this summons shall be returned so indorsed.
   This summons may not be served later than 30 days after its date.

                                          SEP 2 2 2009
WITNESS, _____ 20 ___
                              BRENDAN F. KELLY
                              CIRCUIT CLERK
                                  Clerk of Court

SEAL                      BY DEPUTY: _____

                          DATE OF SERVICE: _____ , 20 ___
                              (To be inserted by officer on copy left with defendant
                                      or other person)

NOTICE TO DEFENDANT IN SMALL CLAIMS UNDER $15,000 - -SEE REVERSE SIDE

                                                          CC-MR-1

## NOTICE TO DEFENDANTS (Pursuant to Supreme Court Rule)

In a civil action for money (under $15,000) in which the summons requires your appearance on a specified day, you may enter your appearance as follows:

1. You may enter your appearance prior to the time specified in the summons by filing a written appearance, answer or motion in person or by attorney at the office of the Circuit Clerk, #10 Public Square, Belleville, Illinois.

2. You may enter your appearance at the time and place specified in the summons by making your presence known to the Judge when your case is called.

When you appear in Court, the Judge will require you to enter your appearance in writing, if you have not already done so. Your written appearance, answer, or motion shall state with particularity the address where service of notice or papers may be made upon you or an attorney representing you.

Your case will be heard on the date set forth in the summons unless otherwise ordered by the Court. Only the Court can make this exception. Do not call upon the Court Clerk or the Sheriff's office if you feel you will be unable to be present at the time and place specified. Continuances can be granted only on the day set forth in the summons, and then only for good cause shown. You, or someone representing you, MUST APPEAR IN PERSON at the specified time and place and make such a request.

If you owe and desire to pay the claim of the plaintiff before the return date on the summons, notify the plaintiff or his attorney of your desire to do so. Request that he appear at the time specified and ask for the dismissal of the suit against you. Do not make such a request of the Court Clerk or the Sheriff, as only the Judge can dismiss a case, and, then only with a proper court order which must be entered in open Court.

*John Driscoll, Sr.*

*9/22/09*

CIRCUIT COURT FOR THE 20TH JUDICIAL CIR

State of Illinois  )
                   ) S.S.
County of St. Clair )

Case Number____ 09-L____ 498

Amount Claimed__ In excess of $50,000

FRANCIS G. LECKER, et. al.

BAYER CORPORATION, et. al.

VS

Plaintiff(s)                           Defendant(s)

Classification Prefix _____ Code _____   Nature of Action _____ Code _____

TO THE SHERIFF: SERVE THIS DEFENDANT AT:

Pltf. Atty.__John J. Driscoll_____Code____
Address __211 N. Broadway, Ste. 2440____
City __St. Louis, MO  63102__ Phone 932-3232
Add. Pltf. Atty. _____Code____

NAME    Bayer Healthcare
        Pharmaceuticals Inc.
        c/o Illinois Corporation Service Company
ADDRESS   801 Adlai Stevenson Drive

SUMMONS COPY

CITY & STATE  Springfield, IL  62703

To the above named defendant(s) . . . . . . :

☐ A.  You are hereby summoned and required to appear before this court at (court location)_____at_____M. On_____ 20 __ to answer the complaint in this case, a copy of which is hereto attached.  If you fail to do so, a judgment by default may be taken against you for the relief asked in the complaint.

☐ B.  You are hereby summoned and required to file an answer in this case or otherwise file your appearance, in the office of the Clerk of this court, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, judgment or decree by default may be taken against you for the relief prayed in the complaint.

TO THE OFFICER:

This summons must be returned by the officer or other person to whom it was given for service, with indorsement thereon of service and fees if any, immediately after service.  In the event that paragraph A of this summons is applicable this summons may not be served less than three days before the day of appearance.  If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS,_____ SEP 2 2 2009 20____

BRENDAN F. KELLY
CIRCUIT CLERK

Clerk of Court

SEAL

BY DEPUTY:_____

DATE OF SERVICE:_____, 20____
(To be inserted by officer on copy left with defendant or other person)

NOTICE TO DEFENDANT IN SMALL CLAIMS UNDER $15,000 - - SEE REVERSE SIDE

CC-MR-1

## NOTICE TO DEFENDANTS (Pursuant to Supreme Court Rule)

In a civil action for money (under $15,000) in which the summons requires your appearance on a specified day, you may enter your appearance as follows:

1. You may enter your appearance prior to the time specified in the summons by filing a written appearance, answer or motion in person or by attorney at the office of the Circuit Clerk, #10 Public Square, Belleville, Illinois.

2. You may enter your appearance at the time and place specified in the summons by making your presence known to the Judge when your case is called.

When you appear in Court, the Judge will require you to enter your appearance in writing, if you have not already done so. Your written appearance, answer, or motion shall state with particularity the address where service of notice or papers may be made upon you or an attorney representing you.

Your case will be heard on the date set forth in the summons unless otherwise ordered by the Court. Only the Court can make this exception. Do not call upon the Court Clerk or the Sheriff's office if you feel you will be unable to be present at the time and place specified. Continuances can be granted only on the day set forth in the summons, and then only for good cause shown. You, or someone representing you, MUST APPEAR IN PERSON at the specified time and place and make such a request.

If you owe and desire to pay the claim of the plaintiff before the return date on the summons, notify the plaintiff or his attorney of your desire to do so. Request that he appear at the time specified and ask for the dismissal of the suit against you. Do not make such a request of the Court Clerk or the Sheriff, as only the Judge can dismiss a case, and, then only with a proper court order which must be entered in open Court.

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

FRANCIS G. LECKER, et. al.,

Plaintiffs,

v.

Case No. : 09-L- *498*

BAYER CORPORATION,
BAYER HEALTHCARE LLC, and
BAYER HEALTHCARE
PHARMACEUTICALS INC.,

Defendants.



## AFFIDAVIT

This affidavit is made pursuant to Supreme Court Rule 222(b).  Under penalties of

perjury as provided by §1-109 of the Code of Civil Procedure, the undersigned certifies that the

money damages sought by the plaintiffs herein does exceed $50,000.00.

Respectfully Submitted,

John J. Driscoll, 6276464
**Driscoll & Cueto, LLC**
211 N. Broadway, Ste. 2440
St. Louis, MO  63102
(314) 932-3232
(3140 932-3233 facsimile

Christopher Cueto
**Driscoll & Cueto, LLC**
7110 W. Main St.
Belleville, IL  62223
(618) 277-1554
(618) 277-0962 facsimile

Robert L. Salim
1901 Texas Street
Natchitoches, LA  71457
(318) 352-5999
(318) 352-5998 facsimile

*Attorneys for Plaintiffs*

**IN THE CIRCUIT COURT**
**TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY, ILLINOIS**

FRANCIS G. LECKER, KENNETH MILLER,      )
JR., Individually, and on behalf of the Estate of )
KENNETH MILLER, SR., deceased, and the  )
wrongful death beneficiaries of KENNETH )
MILLER, SR., deceased, JOHN M. MULLEN,  )
BARBARA REZENTES, as Personal           )
Representative of the Estate of FRANK CABRAL )
REZENTES, SR., deceased, JULIA M. SHEPER, )
LAWRENCE C. SCOTT, ALLEN K. SHIROMA,    )
as Personal Representative of the Estate of )
KATHLEEN JOANNE SHIROMA, deceased,      )
LEONA B. SINEGAR, DOROTHY SNEED,        )
MARY GLEN SPENCER, WILLIAM E.           )
STIDHAM, JANICE STURGIS, MICHAEL        )
SUMMERFIELD, LAWRENCE TAYLOR, as        )
Personal Representative of the Estate of CAROL )
JACQUELINE TAYLOR, deceased, MELVIN G.  )
TINKEL, LAWRENCE TOKOSCH,               )
ROOSEVELT WALKER, JR., and VERDA        )
LYNN WOODRELL,                          )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )   Case No. 09-L-498
                                        )
BAYER CORPORATION, BAYER                )
HEALTHCARE LLC, and BAYER               )
HEALTHCARE PHARMACEUTICALS INC.,        )
                                        )
        Defendants.                     )
                                        )

```
┌─────────────────────┐
│        FILED        │
│   ST. CLAIR COUNTY  │
│                     │
│    SEP 2 8 2009      │
│                     │
│     Barbara F. Kelly │
│ 1    CIRCUIT CLERK  │
└─────────────────────┘
```

**NOTICE OF FILING NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1446 (a) notice is hereby given that on September 28, 2009, a

Notice of Removal of this action (attached hereto as Exhibit A) was filed with the Clerk of the

United States District Court for the Southern District of Illinois.

Respectfully submitted,

Terry Lueckenhoff
Katherine M. Fowler, #06273878
Michael E. Donelson, #06269655
Fox Galvin, LLC
One S. Memorial Drive, 12th Floor
St. Louis, MO 63102
314-588-7000
314-588-1965 (Facsimile)
tlueckenhoff@foxgalvin.com
kfowler@foxgalvin.com
mdonelson@foxgalvin.com
*Attorneys for Defendants Bayer Corporation,*
*Bayer HealthCare LLC, and Bayer*
*HealthCare Pharmaceuticals Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2009, a true and correct copy of the above and foregoing pleading was sent via U.S. Mail, postage prepaid, to:

John J. Driscoll
Driscoll & Cueto, LLC
211 N. Broadway, Suite 2440
St. Louis, MO 63102

Christopher Cueto
Driscoll & Cueto, LLC
7110 W. Main St.
Belleville, IL 62223

Robert L. Salim
1901 Texas Street
Natchitoches, LA 71457

*Attorneys for Plaintiffs*